UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Marquette Business Credit, Inc., | Court File No. 14-cv-354 (MJD/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Edward G. Gleason, et al., | |
| Defendants. | |

This matter comes before the undersigned United States Magistrate Judge upon Defendant Edward G. Gleason's Motion to Dismiss, [Docket No. 49]; and Plaintiff Marquette Business Credit, Inc.'s Motion for Summary Judgment, [Docket No. 67]. The Honorable Michael J. Davis, Chief United States District Judge for the District of Minnesota, referred the present motions to the undersigned United States Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). (Orders of Referral [Docket Nos. 53, 73]). The Court held a motions hearing on March 24, 2015, and the Court took the parties' motions under advisement. For reasons discussed herein, the Court recommends **DENYING** Defendant Gleason's Motion to Dismiss, [Docket No. 49]; and **GRANTING** Plaintiff's Motion for Summary Judgment, [Docket No. 67].

I.   **STATEMENT OF FACTS**

  A.   **Background**

The present case arises from an alleged breach of an underlying settlement agreement. Plaintiff Marquette Business Credit, Inc. ("Plaintiff") alleges that several years ago, Defendants

Edward G. Gleason and Sonak Management, LLC[1] (collectively, "Defendants"; respectively, "Gleason" and "Sonak") settled an underlying legal dispute[2] with Plaintiff. (Compl. [Docket No. 1], at 1). However, Plaintiff alleges that Defendants have since breached the terms of the underlying settlement.

Plaintiff alleges that in September 2010, Plaintiff, Gleason, and Sonak settled an underlying legal dispute, International Wood, and memorialized the terms in a Settlement Agreement, [Docket No. 1-1], and an attached Confession of Judgment.[3] (Id. ¶ 7). However, Gleason and Sonak never executed the Confession of Judgment. (Id. ¶¶ 12-17). Now, as a result of Defendants' failure to pay Plaintiff $150,000, as required by the Settlement Agreement, and Defendants' failure to execute the Confession of Judgment, Plaintiff alleges one count of breach of contract, (Id. ¶¶ 20-28), and one count of breach of the duty of good faith and fair dealing, (Id. ¶¶ 29-32), against Gleason and Sonak. Plaintiff demands relief in the form of (1) an award of damages in the amount of $150,000; (2) an order for specific performance directing Defendants to execute the Confession of Judgment; and (3) an award of reasonable attorneys' fees, costs, and expenses. (Id. at 6).

Unlike the Confession of Judgment, Plaintiff, Sonak, Gleason, and a fourth party did execute the Settlement Agreement. (Settlement Agreement [Docket No. 1-1], at 1). The Settlement Agreement memorialized Gleason's representation that "he and/or Sonak are *currently* unable to pay the amount of the confessed judgment to Marquette[,]" namely, $150,000. (Id.) (emphasis added). The Settlement Agreement provides:

---

[1] Sonak Management, LLC is a limited liability company with two members: Gleason and his wife, who is not a party to the present case. (Compl. [Docket No. 1], ¶ 3).
[2] Marquette Business Credit, Inc. v. International Wood, Inc., et al., No. 08-cv-1383 (JNE/FLN) (D. Minn.) (herein after "International Wood").
[3] The execution of a Confession of Judgment was distinct from the Defendants' obligation to pay Plaintiff $150,000, and merely provided Plaintiff with a means of seeking to collect $150,000 from Defendants in the event they failed to pay within two years.

> Because Gleason and Sonak have represented that they are currently unable to pay the amount of the confessed judgment to Marquette, a representation on which Marquette relies in agreeing to settle the Litigation, Gleason and Sonak shall confess a judgment to Marquette in the amount of $150,000 in the form attached hereto as Exhibit A. *This represents an agreed amount due and owing under the Limited Guaranty.*[4]
>
> The confession of judgment shall be subject to the following two terms:
>
> a. *If, within two years* of the Parties' execution of this Settlement Agreement, *Gleason* and/or Sonak *have satisfied* the confessed judgment *in full*, Marquette shall not file this confession of judgment.
>
> b. *If, however*, *Gleason* and/or Sonak *have not fully satisfied* the confessed judgment *within two years*, Marquette may file the confessed judgment and *may proceed with execution and collection of any amount remaining unpaid* at the time the confessed judgment is filed.

(Id. ¶ 4) (emphasis added). Additionally, the Settlement Agreement included terms providing that any potentially collectable Hunter Douglas receivables could off-set Gleason's/Sonak's $150,000 judgment:

> Gleason shall assist Marquette to collect any outstanding accounts receivable which were owed by Hunter Douglas to International Wood. After expenses, fifteen percent of any net amount of Hunter Douglas accounts receivable collected shall offset Gleason's and Sonak's confessed judgment to Marquette. All remaining amounts collected, after expenses, shall be remitted to Marquette.

(Id. ¶ 5).

The Clerk's Office entered default judgment in the amount of $150,000 against Defendant Sonak on October 23, 2014. (Default Judgment [Docket No. 39]).[5]

---

[4] $150,000 was Defendant Gleason's and Sonak's several share of the total $500,000 settlement agreed to by Plaintiff. (Settlement Agreement [Docket No. 1-1], ¶ 3).

[5] The undersigned United States Magistrate Judge recommended awarding Plaintiff its fees and costs against Sonak on December 22, 2014. (Report and Recommendation [Docket No. 60]). The Clerk's Office entered a cost judgment in favor of Plaintiff against Sonak on December 29, 2014. (Amended Cost Judgment [Docket No. 62]). The

3

**B.     Undisputed Facts**

In the underlying litigation, International Wood, see footnote 2, supra, the parties reached a settlement in principle moments before proceeding to trial, on September 20, 2010. International Wood, No. 08-cv-1383 (JNE/FLN) (Minute Entry [Docket No. 167]). The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, entered an Order dismissing the International Wood litigation on December 2, 2010. International Wood, No. 08-cv-1383 (JNE/FLN) (Order [Docket No. 168]). Judge Ericksen reserved jurisdiction for a period of ninety (90) days, "to permit any party to move to reopen the action, for good cause shown, or to submit and file a stipulated form of final settlement, or to seek enforcement of the settlement terms." (Id.)

On April 28, 2011, the parties appeared before Judge Ericksen upon Plaintiff's Motion to Enforce Settlement. International Wood, No. 08-cv-1383 (JNE/FLN) (Minute Entry [Docket No. 183]). Judge Ericksen resolved the parties' singular outstanding dispute from the bench[6] and directed the parties to submit final settlement documents accordingly. (Id.) However, following resolution of Plaintiff's Motion to Enforce Settlement, Defendants still refused to execute the Settlement Agreement.

On September 30, 2011, approximately one year after the parties had first reached a settlement in principle, Judge Ericksen explicitly ordered Gleason to execute the Settlement

---

Honorable Michael J. Davis adopted the Undersigned's Report and Recommendation awarding Plaintiff its fees on January 20, 2015. (Order Adopting Report and Recommendation [Docket No. 76]).

[6] Judge Ericksen's comments in a later Order in International Wood indicate that the April 2011 dispute concerned Defendants' financial disclosures and the amount of time Plaintiff would have after receiving said disclosures to reopen any judgment entered in accordance with the settlement. International Wood, No. 08-cv-1383 (JNE/FLN) (Order [Docket No. 199], at 2) ("The sole issue that the parties have not been able to resolve is the length of time that Marquette has under the settlement agreement to challenge the accuracy of Edward Gleason's financial disclosures, and, if Marquette finds them fraudulent, to undo the settlement, to resurrect all of its claims against Mr. Gleason and Sonak Management, and to try Marquette's entire case to the Court."). Judge Ericksen allowed Plaintiff a period of ninety (90) days after receipt of Defendants' financial disclosures to address its concerns, if any, with the financial disclosures and potentially "undo" the settlement. (Id.) Plaintiff did not thereafter seek to undo the settlement.

Agreement. <u>International Wood</u>, No. 08-cv-1383 (JNE/FLN) (Order [Docket No. 199]). The transcript of the October 13, 2011, show cause hearing before Judge Ericksen in <u>International Wood</u> unequivocally establishes that Gleason signed and executed the Settlement Agreement on October 13, 2011. At that time, Judge Ericksen explicitly rejected Gleason's objections to the Settlement Agreement and rebuffed his attempts to alter the terms of the Settlement Agreement based on his personal, subjective preferences:

> **Mr. Gleason:** I just want [paragraphs] four and five to be altered. I . . . want Marquette to be compelled to make a genuine effort to go after those [Hunter Douglas] receivables.

(October 13, 2011, Hearing Transcript [Docket No. 15-1], at 12). After confirming that Gleason had indeed agreed to the settlement terms as placed on the record on September 20, 2010, Judge Ericksen explained:

> **Judge Ericksen:** And because of the agreement, I took it off my trial – we have time limits, and people have disputes. They have a right to have a trial. We set it on for trial. And if things are going to go to trial, they go to trial. That's fine, no problem. But if they're not, they don't.
>
> And that's why we put the settlement terms on the record, because we can't have these cases go on forever. And we can't just use the citizens that come in for jury duty as settlement tools or something. You know, that's kind of an abuse of the process.
>
> And so when there is a trial set and then when there is an agreement, then that agreement is the agreement, regardless of how it came to be. Regardless of whether it's a good idea or what people's subjective intent was when they did it, that's the agreement.
>
> . . .
>
> So that's the situation. And the way the Court system works is if you enter into an agreement, you have to go through with the agreement. And so I can't – I didn't negotiate the agreement in the first place. You know, I'm here. I'm here to try the case or accept a settlement.

5

> But I'm not here to be jerked around about we settle; no, we don't.

(Id. at 13-14). Following this colloquy, Judge Ericksen explicitly ordered Gleason to sign the Settlement Agreement, stating that "the future will be whatever it's going to be in terms of the receivables and your obligations with them." (Id. at 14).

Despite Judge Ericksen's remarks, Gleason continued to protest: "I don't read that language that they are obligated to go after Hunter Douglas. . . . I have – the language in there doesn't require Marquette to go after Hunger Douglas[.]" (Id. at 15). Judge Ericksen then asked Gleason why he waited a year to take issue with the language in the Settlement Agreement concerning Hunger Douglas, to which Gleason replied that he had only recently realized that the Settlement Agreement *did not obligate Plaintiff to go after Hunter Douglas*:

> **Mr. Gleason:** And then I'm re-reading the agreement, it was clear to me that they do not have to go after Hunter Douglas. That they can, you know, write a letter and be done with it. Or, you know, make some – and not truly go after Hunter Douglas. . . . I would have not thought that they had no intentions of going after this money that was owed to them. . . . And I wanted stronger language in there that required them to go after Hunter Douglas.

(Id. at 16).

Judge Ericksen recognized that Gleason was attempting at that untimely hour to write his subjective preferences into the Settlement Agreement – namely, that Plaintiff should be *required* to go after the Hunter Douglas receivables, to off-set the $150,000 Gleason owed Plaintiff. However, Judge Ericksen explained that Gleason's subjective expectations regarding collection of the Hunter Douglas receivables – only first raised more than one year after the parties originally placed the material terms of the Settlement Agreement on the record – were largely irrelevant:

> **Judge Ericksen:** And so when you settled the case, you were under one impression about what was going to happen. And you were satisfied that the agreement covered what you expected would happen, which is that they would go after the receivables, and then you could participate in that going after them, and you would get 15 percent, and that would help. I understand that that's what you psychologically thought.
>
> From the Court's perspective, I can't get into what people thought, what they hoped would happen, how times changed, situations changed. . . . But to come back and say, oh, wait a minute, now all this time has gone by, and they're not doing what I thought they were going to do. And now that I reread it, I see that they gave themselves some wiggle room in the language. And so now I want the language change so that it reflects what my subjective belief was when this was entered into is not how it works. Because that would be to say we're going to blow the whole thing up, and we're going to go back, and we're going to have a trial. We're not going to have a trial now because it was settled.

(Id. at 18-19). Judge Ericksen informed Gleason that he had missed his window for renegotiating the Settlement Agreement language, and that if Gleason were to decline to sign the Settlement Agreement as it existed, without his preferred amendments, Judge Ericksen would find him in contempt. (Id. at 19-20). After discussing the situation with his attorney off the record, Gleason agreed to sign the Settlement Agreement. (Id. at 21). Judge Ericksen agreed to retain jurisdiction over the matter for two years "to resolve any dispute that would arise out of this settlement agreement," and the parties executed the Settlement Agreement at the hearing. (Id. at 22-23).

Also at the October 13, 2011, hearing, Gleason explicitly recognized that paragraph 4 of the Settlement Agreement allowed Plaintiff to "come after" Gleason for $150,000: "And all I'm saying is the language in their part, the language in paragraph 4 is clear: Two years, they can come after me." (Id. at 18).

Plaintiff and Gleason have previously represented to the Court that the Settlement Agreement attached to the Complaint, [Docket No. 1-1], is a true and correct copy of the

Settlement Agreement executed in <u>International Wood</u>. (Joint Rule 26(f) Report [Docket No. 33], at 3).

Gleason concedes that he signed the Settlement Agreement on October 13, 2011. (Pl.'s Reply in Support of Mot. to Dismiss [Docket No. 78], at 2). Gleason denies ever receiving the Confession of Judgment for him to execute. (<u>Id.</u>) However, the present record before the Court indicates that Gleason's <u>International Wood</u> counsel received a copy of the Confession of Judgment for Gleason's execution at approximately 11:20 a.m. on October 13, 2011. (Supalla Decl. [Docket No. 70], Ex. A).

Gleason admits that from October 12, 2011, through October 13, 2013, he never paid Plaintiff the $150,000, as required by the Settlement Agreement. (Supalla Decl. [Docket No. 70-2], at 37, 62). Gleason further admits that he has not paid Plaintiff any portion of the $150,000 through the present time. (<u>Id.</u>) Gleason also admits that he never executed the Confession of Judgment. (<u>Id.</u>)

## II.   DEFENDANT GLEASON'S MOTION TO DISMISS, [DOCKET NO. 49]

Gleason, *pro se*, moves the Court for an order dismissing Plaintiff's Complaint with prejudice. (Def.'s Mot. to Dismiss [Docket No. 49]). The "legal basis" for Gleason's motion appears to be his argument that the Court presently lacks jurisdiction to hear Plaintiff's claims. Gleason argues that Judge Ericksen "agreed to keep jurisdiction" over the present issues for only a period of two years. (Def.'s Mem. [Docket No. 50], at 1). Gleason argues that Plaintiff had the opportunity to return to Judge Ericksen with any concerns regarding the underlying lawsuit but instead decided to wait more than two years before filing the present suit. (<u>Id.</u>) Gleason argues that as a direct result, Plaintiff is necessarily barred from pursuing the present claims, which constitute an impermissible "second bite at the apple." (<u>Id.</u> at 2). Gleason also argues that

Plaintiff failed to "go after" the Hunger Douglas receivables as some kind of unmet condition precedent; however, Gleason fails to produce any evidence to this effect.

### A.   Standard of Review

"A court must dismiss an action over which it lacks subject matter jurisdiction." Pomerenke v. Bird, No. 12-cv-1757 (DSD/JJG), 2014 WL 30363, at *1 (D. Minn. Jan. 3, 2014) (citing Fed. R. Civ. P. 12(h)(3)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a pleading for lack of subject matter jurisdiction. Such a motion may, at any time, challenge the sufficiency of the pleading on its face or may challenge the factual truthfulness of its allegations. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a factual challenge, courts may consider matters outside of the pleadings, and no presumptive truthfulness attaches to the plaintiff's factual allegations. Osborn, 918 F.2d at 729-30, n.6.

### B.   Analysis

As articulated above, Judge Ericksen retained jurisdiction over the International Wood litigation for a period of two years following execution of the Settlement Agreement, which period expired on October 13, 2013. Judge Ericksen specifically retained jurisdiction *only* over disputes concerning the Settlement Agreement itself; she did not indicate in any way that she was retaining jurisdiction over any future breach of contract claims arising out of non-performance under the Settlement Agreement.

On July 23, 2014, Plaintiff's counsel filed a letter in the International Wood case notifying Judge Ericksen that "a dispute has arisen regarding the enforcement of the Settlement Agreement" and that Plaintiff had filed a second lawsuit to resolve the dispute. International Wood, No. 08-cv-1383 (JNE/FLN) (Letter to District Judge [Docket No. 206]). Plaintiff

requested Judge Ericksen reopen International Wood and resolve the "issues about enforcement of the Settlement Agreement and final disposition of Marquette's claims[.]" (Id.) Judge Ericksen summarily denied the request in a Text Only Order, [Docket No. 207].

Consistent with well-established law concerning federal subject matter jurisdiction, diversity jurisdiction, and supplemental jurisdiction, the United States Supreme Court has held that federal courts may exercise jurisdiction over breach of contract suits seeking to enforce settlement agreements when there exists an independent basis for federal jurisdiction over the enforcement claim. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 382, 114 S. Ct. 1673, 1677, 128 L. Ed. 2d 391 (1994) ("[E]nforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction."). Additionally, Plaintiff was not required to bring the present claims in International Wood; parties have the option of filing separate breach of contract actions for damages as opposed to motions to enforce the settlement agreement in the existing case:

> We are not persuaded by the defendants' contention that jurisdiction fails because Myers filed a separate action for damages instead of a motion to enforce the settlement agreement in the prior action. As the Kokkonen Court noted, "[e]nforcement of the settlement agreement, . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit." 511 U.S. at 378, 114 S. Ct. 1673.

Myers v. Richland Cnty., 429 F.3d 740, 747 (8th Cir. 2005).

On the pleadings, and without any evidence to the contrary, the Court has subject matter jurisdiction over the present case pursuant to 28 U.S.C. § 1332(a)(1) – Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

Nothing in the present record before the Court indicates that it does not have subject matter jurisdiction over Plaintiff's present breach of contract claims. Nothing in the present

record indicates that Judge Ericksen or any proceedings in the International Wood litigation limited or otherwise constrained the standard six-year statute of limitations that applies to breach of contract actions initiated in Minnesota.[7] Gleason's Motion to Dismiss is, therefore, without merit. Judge Ericksen's limited retention of jurisdiction in International Wood has no bearing on the present case, and the terms of the Settlement Agreement itself provide that Plaintiff may seek to enforce the Settlement Agreement if, *after* two years, Gleason has not complied with the terms therein.

### III.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, [DOCKET NO. 67]

Plaintiff moves the Court for an order entering summary judgment against Gleason. (Pl.'s Mot. for Summ. J. [Docket No. 67]). Plaintiff's argument in support of summary judgment is straight-forward: the Settlement Agreement is a valid, enforceable contract; Gleason breached; and Plaintiff is entitled to damages. The undisputed facts of the present case demonstrate that Gleason executed and subsequently breached the terms of the underlying Settlement Agreement (1) by failing to pay Plaintiff $150,000 within two years, and (2) by refusing to execute the Confession of Judgment in the amount of $150,000, to allow Plaintiff to seek to collect the $150,000 judgment without needing to come back to the Court. As a direct result, Plaintiff argues that it is entitled to summary judgment on its claims for breach of contract and breach of the duty of good faith and fair dealing, and that it is entitled, therefore, to damages in the amount of $150,000, plus interest, attorneys' fees, and costs.

Gleason did not file a written response to Plaintiff's Motion for Summary Judgment; however, the Court allowed Gleason to orally argue on the record in opposition to the motion at the March 24, 2015, motions hearing. On the record at the March 24, 2015, motions hearing,

---

[7] Minnesota law provides that Plaintiff's breach of contract claims are subject to a six-year statute of limitations. Minn. Stat. § 541.05, subd. 1(1). In diversity actions, the Court looks to state law when considering the substantive aspects of the claims pled.

11

Gleason explicitly represented that his argument in opposition to Plaintiff's Motion for Summary Judgment is identical to his argument in support of his motion for dismissal. Gleason argued that the Court cannot enter summary judgment in favor of Plaintiff because the Court does not have subject matter jurisdiction over the present case. (Digital Transcript at 11:45:10).

### A.     Standard of Review

Summary judgment is appropriate when the evidence demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A disputed fact is "material" if it may affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of producing sufficient admissible evidence to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, and the Court must grant the nonmoving party the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the nonmoving party may not rest on mere allegations or denials in their pleadings but must set forth specific, admissible, evidence-based facts demonstrating the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

"Naked assertions, unsubstantiated by the record" made in rebuttal do not amount to evidence sufficient to preclude summary judgment. Dutton v. University Healthcare Sys., LLC, 136 Fed. App'x 596 (5th Cir. 2005) (unpublished decision); see also Simms v. McDowell, 2009

WL 3160353, at *5 (W.D. Ky. Sept. 25, 2009) (holding that speculation that someone lied in an affidavit is "insufficient to defeat a motion for summary judgment"). "A properly supported motion for summary judgment is not defeated by self-serving affidavits." Frevert v. Ford. Motor Co., 614 F.3d 466, 473 (8th Cir. 2010) (quoting Bacon v. Hennepin County Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008)). "Rather, the [nonmoving party] must substantiate allegations with sufficient probative evidence that would permit a finding in the [nonmoving party's] favor." Id. at 473-74.

"Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

**B.    Analysis**

The principles of contract law govern settlement agreements. MLF Realty L.P. v. Rochester Ass'n, 92 F.3d 752, 756 (8th Cir. 1996). In a diversity case, a federal court construes a settlement agreement by applying the contract law of the forum state. Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir. 1999).[8] Courts in Minnesota favor the settlement of disputes by agreement. Jackson v. Fed. Reserve Employee Ben. Sys., No. 08-cv-4873 (DSD/FLN), 2009 WL 2982924, at *4 (D. Minn. Sept. 14, 2009). Minnesota law requires the Court to ascertain and give effect to the intent of the parties to the settlement agreement. Id. at *2. Intent to contract is based upon the *objective* manifestations of the parties and not upon subjective, but unmanifested intent. See Horton Mfg. Co., Inc. v. Tol-O-Matic Inc., 973 F.2d 649, 651 (8th Cir. 1992) (applying Minnesota law). "Basic principles of contract formation govern the existence and enforcement

---

[8] Paragraph 11 of the Settlement Agreement at issue further provides that "[t]he Parties agree that this Settlement Agreement shall be construed, interpreted, and enforced under the laws of the State of Minnesota." (Settlement Agreement [Docket No. 1-1], ¶ 11).

13

[of an] alleged settlement." Chaganti & Assocs. v. Nowotny, 470 F.3d 1215, 1221 (8th Cir. 2006) (quoting Sheng v. Starkey Labs., Inc., 53 F.3d 192, 194 (8th Cir. 1995)).

At the March 24, 2015, motions hearing, Gleason conceded that the Settlement Agreement attached to Plaintiff's Complaint, [Docket No. 1-1], is *substantively* identical to the Agreement Gleason executed at the October 13, 2011, hearing before Judge Ericksen. Gleason further conceded that he never executed the Confession of Judgment and that he has not paid any portion of the $150,000 owed to date.

As indicated above, "an action to enforce a settlement agreement is a claim for breach of contract[.]" Myers, 429 F.3d at 745. Under Minnesota law, a breach of contract claim contains four elements: (1) formation of a contract, (2) performance by plaintiff of any conditions precedent, (3) material breach of the contract by defendant, (4) damages. Petsche v. EMC Mortgage Corp., 830 F. Supp. 2d 663, 669 (D. Minn. 2011) (citing Parkhill v. Minn. Mut. Life Ins. Co., 174 F. Supp. 2d 951, 961 (D. Minn. 2000)).

The present undisputed record before the Court indicates that the parties entered into a valid, enforceable contract (i.e., the Settlement Agreement), that Gleason materially breached the terms of the contract (i.e., (1) failed to pay Plaintiff $150,000 within two years, and (2) failed to execute the Confession of Judgment), and that Plaintiff sustained damages as a result thereof. Gleason offers no evidence to rebut any material element of Plaintiff's breach of contract claim.

Significantly, the Settlement Agreement does not contain – and has *never* contained – any "conditions precedent" – Plaintiff did not have to perform any specific task(s) to trigger Gleason's contractual obligations. Paragraph 5 of the Settlement Agreement provides that "Gleason shall assist Marquette to collect any outstanding accounts receivable which were owed by Hunter Douglas to International Wood[,]" and that fifteen percent of the collected amounts

would off-set the amount of Defendants' confessed judgment. (Settlement Agreement [Docket No. 1-1], ¶ 5). Despite Gleason's arguments to the contrary, collection of Hunter Douglas receivables was *not* a condition precedent. The plain language of the Settlement Agreement indicates that collected receivables, *if any*, would off-set Defendants' $150,000. However, nothing in the language of the Settlement Agreement *requires* Plaintiff to attempt to collect the receivables. The Hunter Douglas receivables are *irrelevant* to Plaintiff's claims in the present case. Indeed, it was this same subjective argument which Gleason sought to verbally interject into the objective terms of the Settlement Agreement when he appeared before Judge Ericksen in the International Wood case on October 13, 2011, and Judge Ericksen explicitly rejected his attempt to incorporate such terms.

Gleason offers no relevant, compelling argument, much less evidence, in response to Plaintiff's motion for summary judgment. No material dispute of fact exists and the undisputed record before the Court indicates that Plaintiff is entitled to judgment as a matter of law on Count I: Breach of Contract. *Gleason has not paid Plaintiff $150,000 as required by the Settlement Agreement.* Gleason signed and executed the Settlement Agreement; he cannot now avoid his obligations pursuant to the Settlement Agreement. Worthy v. McKesson Corp., 756 F.2d 1370, 1373 (8th Cir. 1985) (holding that a party who previously voluntarily entered into a settlement agreement and later changed their mind cannot avoid the agreement) (citing Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207, 1209 (5th Cir. 1981)).

The Court need not reach Count II: Breach of the Duty of Good Faith and Fair Dealing because in light of the foregoing recommendation, the additional count is entirely redundant, immaterial, and, accordingly, moot. Summary judgment on Count I alone entitles Plaintiff to a judgment in the amount of $150,000 in damages and encompasses all other requested relief.

The same may be said of Plaintiff's redundant request for the remedy of specific performance regarding execution of a Confession of Judgment. Because the Court recommends entering summary judgment in Plaintiff's favor on Count I and awarding Plaintiff $150,000 in damages, the Court need not order Gleason to execute the Confession of Judgment. In accordance with Plaintiff's representations at the March 24, 2015, motions hearing, specific performance is merely an alternative means of collecting the $150,000 judgment from Defendants, in the event this Court did not recommend direct entry of judgment in the amount of $150,000 in the present case.

## IV. CONCLUSION

For the foregoing reasons, and based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED:**

1. That Defendant Gleason's Motion to Dismiss, [Docket No. 49], be **DENIED**; and

2. That Plaintiff's Motion for Summary Judgment, [Docket No. 67], be **GRANTED**.[9]

Dated: April 27, 2015                                              s/Leo I. Brisbois
                                                                    Leo I. Brisbois
                                                                    U.S. MAGISTRATE JUDGE

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by May 11, 2015**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by May 25, 2015**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to

---

[9] In the event this Report and Recommendation is adopted, Plaintiff, as with the entry of default judgment against Sonak, see fn. 4, above, will be entitled to petition the Court as to the amount of attorney fees, costs, and expenses it is entitled to insert into the Judgment to be entered against Gleason.

seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.